**SANDERSON v. BURNET, Commissioner of Internal Revenue.**

No. 5593.

Court of Appeals of the District of Columbia.
Argued Dec. 8, 1932.
Decided Jan. 16, 1933.

Albert L. Hopkins and Samuel H. Horne, both of Chicago, Ill., and Edward C. Lake, of Washington, D. C., for appellant.

G. A. Youngquist, Sewall Key, Wm. Cutler Thompson, C. M. Charest, A. H. Conner, and C. H. Curl, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a tax case, and involves petitioner's income taxes for the year 1925. The facts are not disputed, and show petitioner resided in New York, and from 1911 to 1918 was a general partner in the firm of Charles D. Barney & Co., members of the New York Stock Exchange. In 1919 he became a special partner, and in 1921 retired entirely from the firm. He was married in 1914 to Elizabeth Fairchild Howard. His wife at the time of the marriage was worth a little over a million dollars. Prior to the marriage she had maintained an account with the Barney firm, which in 1923 she transferred to the Central Union Trust Company. She bought, sold, and carried securities on margin, had money advanced to her, and bills paid through the Barney firm. In 1915 she purchased land on Long Island on which she erected a residence, which, when completed, cost $1,220,000. Petitioner advanced $600,000 of his own money to assist in paying for the home. In 1921 petitioner and his wife went abroad, where in 1923 difficulties between them arose, resulting in a separation and in 1926 in a divorce in Paris, where both then resided and continued to reside for some time thereafter. In the middle of 1924 petitioner received a letter from a New York attorney asking an accounting of petitioner's administration of his wife's financial affairs. Petitioner then retained counsel and engaged accountants to examine the details of his wife's transactions as shown by the books of the Barney Company and the Central Union Trust Company. One of the demands made by petitioner's wife was that by reason of a deposit by her in 1914 of $100,000 with Barney & Co. she was entitled to have a half of petitioner's interest in the firm's profits, but this claim was withdrawn, and in February, 1925, counsel for petitioner's wife presented to him a bill in equity, which it was represented he intended to file, "alleging that with full confidence in her husband Mrs. Sanderson had permitted him to assume control of her capital, that he had arbitrarily commingled her funds with his own, using her securities as collateral for his loans, diverting income from her, transferring valuable securities of hers to his account, using her money for living expenses, retaining control over her account before and after its transfer to the Union Central Trust Company, and doing divers other improper acts," wherefore she prayed that he be directed to

render a just and full accounting and deliver to her in cash and securities whatever should appear due. The bill in equity was never filed, and petitioner's wife later disclaimed all knowledge of its contents, but petitioner, to avoid litigation and its disagreeable features, compromised the dispute by check contrary to the wishes of his attorney, and paid in the year 1925, on account of counsel fees and other expenses in connection therewith, $37,562.63. The Board held that this expense arose directly out of petitioner's marital situation and was a personal expense within the meaning of section 215 of the Revenue Act of 1926 (44 Stat. 9 [26 USCA § 956]). Petitioner, on the other hand, contends the amount was deductible "as an ordinary and necessary business expense" under the provisions of section 214 (a) (1) of the act, 26 USCA § 955 (a) (1), and relies upon Kornhauser v. United States, 276 U. S. 145, 48 S. Ct. 219, 72 L. Ed. 505, and various decisions of the tax board since the Kornhauser Case.

In the Kornhauser Case the Supreme Court held that attorney's fees paid by the taxpayer in defense of an accounting suit brought by his former law partner respecting shares of stock which the taxpayer had received for professional services claimed by the partner to have been performed during the existence of the partnership were deductible as ordinary and necessary expenses in carrying on a trade or business. The Board of Tax Appeals have applied the ruling in the Kornhauser Case in a number of subsequent cases. In Munson v. Commissioner, 18 B. T. A. 232, where a taxpayer engaged detectives to guard his business property imperiled through circumstances arising in the operation of the business, it was held the expense was deductible. In Continental Co. v. Commissioner, 19 B. T. A. 1095, the Board approved a deduction of attorney's fees paid for services performed in representing taxpayer before the Federal Trade Commission in defending taxpayer against charges of improper practices. And in Citron-Byer Co. v. Commissioner, 21 B. T. A. 308, the Board approved attorney's fees paid in defending the taxpayer against a conspiracy indictment in connection with an alleged conspiracy to defraud the United States in the purchase of wire in connection with the business of the taxpayer. In the last-named case the Board said: "If the fees were paid in defense of an action or proceeding directly connected with and proximately resulting from the ordinary and proper conduct of the taxpayer's business, they are ordinary and necessary expenses of the business and deductible as

such." And they applied the same rule in the case of Howard v. Commissioner, 22 B. T. A. 375, and in Potter v. Commissioner, 20 B. T. A. 252.

We think the quoted language above correctly states the applicable rule, but we do not find in the facts in the case under consideration a justification for its application here. In the Board's finding of facts, there is a statement to the effect that, when the controversy between petitioner and his wife began, the latter claimed, by virtue of the deposit by her of $100,000, a half interest in his profits in the firm of which he had formerly been a member. If the deduction claimed had resulted from expenses incurred in defending this claim, there would be good ground for contending that it was expended in protecting his business interests, and in that aspect was a business expense, the deduction of which is allowable, but the statement of facts also shows that this claim was withdrawn and that the real grounds of the controversy were matters alleged in the bill of complaint, and these, as we have seen, related entirely to questions arising out of the purchase and erection of the Long Island residence, the alleged commingling by the husband of his and his wife's funds, the use by him of her securities as collateral for his loans, and the use of her money for living expenses, rather than anything which had any relation to any business in which he was then or had formerly been engaged. In the state in which we find the record, it is, of course, impossible to segregate or allocate any part of the expenditure made by petitioner to the withdrawn claim with relation to a share of his business income, or, as a matter of fact, to know that even a small part of it was attributable to that claim. If petitioner's wife had a claim against the partnership of which petitioner was formerly a member, the claim doubtless would have been made against the partnership rather than against one of its members. The fact that it was not tends very strongly to show that the conclusion stated above is the correct one, and that the threatened proceeding was in fact for an accounting between husband and wife growing wholly out of their domestic affairs, and this becomes even more apparent when it is considered that the dispute was apparently part and parcel of the separation and divorce. It was therefore a personal, rather than a business, controversy.

In this aspect, the doctrine announced by the Supreme Court in the Kornhauser Case, supra, is without influence, and we think the decision of the Board should be affirmed.

Affirmed.